### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| JASON PAUL PARENT, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No.  2:15-cv-415-JHR |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

### MEMORANDUM DECISION[1]

This Supplemental Security Income ("SSI") appeal raises the questions of whether the administrative law judge based his decision on erroneous medical testimony and whether he incorrectly evaluated the opinion of an evaluating medical source. I affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from anxiety-related disorder/anxiety disorder NOS (not otherwise specified), and personality disorder/personality disorder NOS, impairments that were severe but which, considered separately or in combination, did not meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R.

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement.  Oral argument was held before me on June 17, 2016, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 14.

Part 404, Subpart P (the "Listings"),  Findings 2-3, Record at 17-18; that he had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, except that he could understand, remember, and carry out semi-complex instructions, use judgment in making semi-complex work-related decisions, interact occasionally and appropriately with coworkers, supervisors, and usual work settings not involving the public, and adapt to occasional changes in the ordinary work setting, Finding 4, *id*. at 20; that he had no past relevant work, Finding 5, *id*. at 24; that, considering his age (29 years old on the date his application was filed, November 17, 2011), education (at least high school), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 6-9, *id*.; and that he, therefore, had not been disabled, as that term is defined in the Social Security Act, from November 17, 2011, through the date of the decision, February 26, 2014, Finding 10, *id*. at 25.  The Appeals Council declined to review the decision, *id*. at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146

n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff contends that the administrative law judge impermissibly relied upon the testimony at the hearing of a medical expert, James Claiborn, Ph.D., because that testimony was "erroneous and contrary to Social Security policy" and resulted from prompting by the administrative law judge. Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Itemized Statement") (ECF No. 8) at 3-4. He asserts that the administrative law judge's reading to Dr. Claiborn his testimony "from another, unidentified hearing[] clearly indicat[es] that the ALJ had prejudged the issue and was coaching the ME." *Id.* at 3.

The following testimony by Dr. Claiborn, in response to questioning by the administrative law judge, is at issue:

> Q      Do you believe [the plaintiff] has the ability on a sustained competitive basis to understand, remember, and carry out semi-complex instructions?
> A      I believe so, yes.
> Q      Use judgment and make semi-complex work related decision?
> A      Yes.
> Q      Respond appropriately to co-workers, supervisors and usual work situations not involving the public?
> A      I think he's prone to being a difficult person to interact with so that he's going to have trouble with authority figures particularly. He's not going to respond well to being told what to do. And if we get into an issue where is this something that he's capable of doing or prone to do even though it's responsibility, it's about ability. I think he would have trouble but would manage limited interactions with supervisors and/or co-workers.
> 
> * * *
> 
> Q      What do you say about [consultative examiner] Dr. Quinn's in the—when you turn to the medical source statement, issues with persistence and pace. He may have issues with persistence and pace. And then further the GA[F] score of 50 to 55.

A       Well, what I do think, I think that Dr. Quinn is trying to talk about here is that we've got an individual who, as I indicated also, has problems dealing with authority figures. And, yeah, I think this is an issue of where it's a matter of he finds it uncomfortable so he chooses not to. And similarly, in talking about, you know, he didn't want to go out because he's going to be anxious. And as he described it, you know, the more he stays home the harder it is. So I think, you know, Dr. Quinn in some instance is identifying that he's likely to follow like a pattern, not particularly persistent in things if he thinks they're go[i]ng to be uncomfortable.

Q       Okay.

A       I think that applies to what Dr. Quinn says about reliability.

Q       Elsewhere you testified that you think, we think of behaviors of voluntary choices. People make choices to do things that we consider inappropriate, but have the capacity to control or maintain their behavior an[d] act appropriately if we choose to. Do you remember that?

A       I do.

Q       In this particular case do you think that capability exists?

A       I[] think it does. I think, again, it's a matter of he's uncomfortable with some situations and prefers to avoid them.

Record at 56-58.

Later, Dr. Claiborn responded to questions from the plaintiff's attorney as follows:

Q       . . .[H]e avoids situations because he finds them uncomfortable. Isn't that part of his condition, the personality disorder and the anxiety? Not something that he can flick a switch and control so that that doesn't happen?

A       Well[,] I don't think he can flip a switch, and I think it does bother him and I think it's part of the conditions, yes. But I also think his own testimony today he kind of indicates a very important point which is to say the more he avoids things the more he's convinced he has to avoid things. It doesn't mean that it is something that he has to do or is not capable of acting differently.

Q       . . . [W]ouldn't you agree with Dr. Quinn's evaluation from the point of view of Dr. Quinn writing it would support not being able to work a full-time job on a steady basis, including dealing with supervisors?

A       Well[,] what I understand Dr. Quinn to say is he may have trouble with those areas. I agree, he may have trouble with those areas.

Q       I mean isn't a personality disorder defined as basically [i]ngrained in maladaptive behavior that the person really doesn't have the ability to change?

A       No, it's not defined in terms of doesn't have the ability, it's described that in the main pattern, yes.

Q       . . . I'm just looking at [Listing] 12.08, a personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational function and subjective distress. And they describe the required level of severity in terms of deeply ingrained, maladaptive patterns of behavior associated with the following characteristics. I mean if they're

4

inflexible and maladaptive doesn't that suggest that it's not something within the person's power just to go out and change and work differently?

A     All the diagnoses in DSM really, and by adoption in the Social Security standards essentially are descriptive rather than explanatory. That is to say a person with a personality disorder would be expected to have this ingrained or persistent pattern, trait[-]like pattern of maladaptive behavior and so forth. Nowhere is it included in my understanding of these diagnoses that that means the person is incapable necessarily of acting in a different way.

* * *

What I'm talking about is my understanding of personality disorders, among other things, is that the people have these kinds of patterns of behavior. But as in the statement that [Administrative Law] Judge Melanson read from testimony from another hearing, I think that we have to understand people's behavior in terms of it[]s being effectively operant choice and largely determined by consequences. And that if the individual does not have a behavior in their repertoire, that's a different consideration from having a behavior in the repertoire but choosing not to use it.

Record at 59-61.

The administrative law judge's opinion includes the statement that he "concur[s] with hearing testimony from Dr. Claiborn[,]" which he recited in some detail. *Id.* at 22-24.

To the extent that the plaintiff relies on his allegation of bias as a basis for remand, he has failed to meet the applicable standard. Social Security law includes a presumption that an administrative law judge is unbiased, which requires a demonstration that the administrative law judge whose impartiality is challenged "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." *Clarke v. Colvin*, No. 2:13-cv-377-GZS, 2015 WL 1206495, at *16 (D. Me. Mar. 17, 2015) (quoting *Strout v. Astrue*, Civil No. 08-181-B-W, 2009 WL 214576, at *5 (D. Me. Jan. 28, 2009)). Actual bias must be shown, not just the appearance of impropriety. *Strout*, 2009 WL 214576 at *7. The presumption of impartiality can be overcome only by convincing evidence that a risk of actual bias or prejudgment is present; a finding of prejudice cannot be based on inference. *Bickford v. Barnhart*, No. 05-236-P-S, 2006 WL 2822391, at *5 (D. Me. Sept. 29, 2006). The plaintiff's submission does not meet this standard.

5

The plaintiff cites no authority to support his suggestion that an administrative law judge may not question a medical expert based on his earlier testimony in a different proceeding, and my research has located none.

The plaintiff's primary argument, again without citation to authority, is that Dr. Claiborn's testimony must be rejected because it is "flatly inconsistent with and in opposition to Listing 12.08[.]" Itemized Statement at 3.

The Listings are designed to determine whether a claimant is disabled from all work by the impairment at issue. There is no suggestion in this case that the plaintiff met the requirements of Listing 12.08, which describes personality disorders of sufficient severity to render an applicant disabled. It is not correct to characterize Listing 12.08 as establishing "Social Security policy" for all diagnoses of personality disorders. *Id.* at 4. Rather, the Listing defines the point at which a diagnosed personality disorder becomes sufficiently severe to render an applicant for benefits disabled for the purpose of entitlement to benefits. This is a significantly more limited purpose than that which the plaintiff attempts to assign to the Listing.

In addition, this court has previously rejected a similar argument about Dr. Claiborn's testimony. In *Burns v. Social Sec. Admin. Comm'r*, No. 1:10-CV-00124-JAW, 2011 WL 1364068 (D. Me. Apr. 8, 2011), Dr. Claiborn testified, *inter alia*, with regard to a plaintiff who had been diagnosed with a personality disorder:

> [I]f we think of behaviors as voluntary choices, people may make choices to do things that we consider inappropriate but have the capacity to control or maintain their behavior and act in an appropriate way if they choose to. And it is my opinion that in [the plaintiff's] particular case that that capability exists and has not been exercised.

*Id.* at *4. This testimony followed Dr. Claiborn's expressed opinion that the plaintiff was an individual with sufficient skill to get what he regarded as important, although he also demonstrated

a consistent disregard for the rights of others, which supported the diagnosis of a personality disorder. *Id*. at 3.

The *Burns* plaintiff argued to this court that Dr. Claiborn's testimony could not be reconciled with Social Security's regulatory approach to personality disorders, the Listing for which "describes a history of altercations as material to one's capacity to 'interact appropriately, effectively, and on a sustained basis' with others. *Id*. at *5. The administrative law judge adopted Dr. Claiborn's assessment of the plaintiff's social capacity over that of the plaintiff's treating nurse practitioner. *Id*. Nothing in the plaintiff's presentation in this case requires a different result.[2]

To the extent that the plaintiff means to contend that a diagnosis of personality disorder means that the manifestations of that disorder "are by definition inflexible and maladaptive," Itemized Statement at 3, to the extent that they cannot be controlled or overcome by the individual, he appears to be arguing that the diagnosis of personality disorder is sufficient to require an administrative law judge to award benefits. That argument is contrary to established Social Security law. *See, e.g., Sitar v. Schweiker*, 671 F.2d 19, 20-21 (1st Cir. 1982); *Thomas v. Commissioner of Soc. Sec.*, Civil Action No. 14-13819-JGD, 2016 WL 1170965, at *9 (D. Mass. Mar. 24, 2016) (diagnosis of personality disorder not sufficient to establish eligibility for benefits).

These conclusions make it unnecessary to address the plaintiff's brief derivative argument that, because the administrative law judge's reliance on Dr. Claiborn's testimony was erroneous, so was his evaluation of the opinion of Edward Quinn, Ph.D., a consultant who examined the plaintiff. Itemized Statement at 4.

---

[2] After oral argument, with the court's permission, the plaintiff's counsel submitted a letter brief, to which the defendant's counsel elected not to respond, setting forth his contention that *Burns* should be distinguished from the instant case. Letter dated June 20, 2016, from Daniel Emery, Esq., to Hon. John H. Rich III (ECF No. 16). The letter brief distinguishes *Burns* because it "primarily dealt with whether Dr. Claiborn's testimony was inconsistent with plaintiff's overall history and the opinion of a treating practitioner, not whether it was inconsistent with the definition of Personality Disorder." *Id*. at 2. As explained above, I disagree.

## II.  Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.


Dated this 26th day of August, 2016.


/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge